UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BENIE MUILU LUKANU, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) No. 2:26-cv-00095-LEW |
| | ) |
| TODD LYONS, Acting Director of | ) |
| U.S. Immigration and Customs | ) |
| Enforcement, *et al.*, | ) |
| | ) |
| Respondents | ) |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Benie Muilu Lukanu's Amended Petition for Writ of Habeas Corpus (ECF No. 6). Petitioner seeks relief from restraints on her liberty and a preventive injunction prohibiting her arrest by Immigration and Customs Enforcement agents unless an immigration judge preauthorizes her detention. Respondent Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement, and the other federal respondents oppose the Petition. For the following reasons, the Petition is denied without a hearing.[1]

---

[1] Neither party has requested a hearing though I prompted them to do so if there might be cause. *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts") (collecting case).

## BACKGROUND

The following background statement is drawn from the Amended Verified Petition, the Return and Response, Petitioner's Reply, and exhibits introduced in support of those filings.

Petitioner is a national of the Democratic Republic of Congo ("DRC"). According to her Amended Petition, which is verified, Petitioner presently lives in Portland, Maine, with her husband and nine-month-old United States citizen daughter. Petitioner first unlawfully entered the United States in November 2018. She was stopped and detained at that time and processed for expedited removal under 8 U.S.C. § 1225(b)(1). She applied for asylum in the United States, which extended her detention,[2] but her application was denied by an immigration judge in an order of removal dated June 13, 2019. On or about October 13, 2020, Petitioner was removed from the United States.

On or about October 6, 2024, a U.S. Border Patrol ("USBP") agent encountered Petitioner at or near Sasabe, Arizona, after she had reentered the United States without inspection or admission. It was determined that she had entered unlawfully at a time and place other than as designated by the Attorney General. Thereafter, the Petitioner's June 2019 order of removal was reinstated under 8 U.S.C. § 1231(a)(5). At the time of this encounter, Petitioner did not claim fear of removal to the Democratic Republic of Congo. She was released from custody and issued an order of release on recognizance, instead of an order of supervision. As a condition of release, Petitioner was enrolled in an alternative

---

[2] Petitioner was detained on an order of an immigration judge following a custody redetermination hearing, in accordance with ICE practice circa 2019.

to detention, weekly biometric reporting program, without GPS monitoring. Evidently, this involves carrying a cell phone and weekly reporting. Failure to comply with these conditions may result in Petitioner's arrest and deportation. Petitioner has not been detained since her 2024 entry.

## DISCUSSION

Petitioner argues that the circumstances of her release necessarily mean that she was conditionally paroled under 8 U.S.C. § 1226(a)(2)(B). She maintains that an unannounced arrest and detention on existing process (the reinstated removal order) or an administrative arrest warrant would violate the Due Process Clause of the Fifth Amendment to the United States Constitution, even if it would not otherwise violate the Immigration and Nationality Act ("INS"). She maintains that the only constitutional means of taking her into custody at this time would be on the order of an immigration judge following a hearing in immigration court. Am. Pet. ¶¶ 8, 22-23; Reply at 2-3, 9, 12-20.

In opposition, Respondents do not cite a particular statute as the source of their authority to release Petitioner. Instead, they cite 8 U.S.C. § 1182(a)(9) and § 1231(a)(2) as the source of their statutory authority to detain Petitioner without any bond determination. The former statutory provision states, in effect, that Petitioner is categorically inadmissible to the United States because she reentered sooner than five years after her prior removal. *Id.* § 1182(a)(9)(A)(i). She is in this sense present without the prospect of admission. The latter statutory provision states, in relevant part, that "[d]uring the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A).

Although not cited by either party, Congress has also legislated:

3

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

*Id.* § 1232(a)(5). In other words, Petitioner is subject to removal "at any time." *Id.*

### A.　Standing and Ripeness

The foregoing statutory provisions frame the merits inquiry. But before reaching the merits, Respondents argue that the Amended Petition should be dismissed because Petitioner lacks standing and her habeas corpus claim is unripe. Specifically, Respondents argue that Petitioner seeks relief from detention that she is not presently experiencing. Respondents also argue that Petitioner is seeking an advisory opinion about the legality of a possible future scenario rather than any impending harm, describing Petitioner's fear of future detention as speculative. Return and Response at 1-3. To this, Petitioner argues that she is clearly in custody already because she is subject to an order of removal. Reply at 1 (quoting *Simmonds v. I.N.S.*, 326 F.3d 351, 354 (2d Cir. 2003) ("[S]ubjecting an alien to a final order of removal is to place that alien in custody within the meaning of the habeas statute.")). Petitioner explains that she is challenging the conditions of her custody, which includes the procedure upon which she can be taken from her family and removed from the United States, and which conditions she says are subject to injunctive relief and not merely an advisory opinion.

I agree with Petitioner that she is in custody for purposes of habeas corpus and that she may challenge the conditions of her custody, including her apparent vulnerability to

summary administrative detention without a hearing under the INA. The lawfulness of immigration custody, including related restraints on liberty, is subject to review in a United States District Court under 28 U.S.C. § 2241. Here, Petitioner is not presently in detention, but detention for purposes of removal is for her not a matter of if, but when, if I am to take the statutory scheme at its word. Given this reality, she is subject to "restraints not shared by the public generally," *Jones v. Cunningham*, 371 U.S. 236, 240 (1963) (parolee), and, consequently, her habeas corpus claim is appropriately before the Court and ripe for consideration, including in relation to prospective detention.[3]

**B.   Merits**

The INA provides a statutory scheme for the civil detention of noncitizens unlawfully in the United States, both pending removal proceedings and after a final order of removal has been entered. *See generally* 8 U.S.C. §§ 1225, 1226, 1231. The circumstances of entry as well as the stage of the removal process determine where a noncitizen falls within this scheme and whether detention is discretionary or compulsory. However, nothing in the statutory scheme of the INA suggests that an immigration judge is a gatekeeper when it comes to the authority to arrest and detain noncitizens for purposes of effectuating a removal order. *Cf. Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021) ("We conclude that § 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue

---

[3] *See also Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973) (release on personal recognizance); *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68 (D. Mass. 2025) (noncitizen illegally in the United States and subject to intensive supervision).

withholding of removal."). It is for this reason that Petitioner's appeal is to the Due Process Clause of the Constitution rather than the INA.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. am. V. The Fifth Amendment applies to aliens facing removal. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Ordinarily, "once passed through our gates, even illegally," noncitizens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Yet, "[d]ue process is not a one size fits all proposition." *Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022). As the Fourth Circuit has explained:

> To the contrary, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Moreover, "[i]ts flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id.*; *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").
>
> This is particularly true in the immigration context. The Supreme Court has stated over and over that "'[i]n the exercise of its broad power over immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Demore* [*v. Kim*], 538 U.S. [510], 521 [(2003)] (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)); *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993) (quoting *Fiallo v. Bell*, 430 U.S. 787 (1977), in turn quoting *Mathews*, 426 U.S. at 79-80); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 273 (1990) (citing *Mathews*, 426 U.S. at 79-80).

*Id.* Thus, while the Due Process Clause applies to this scenario, it is essential to remember that Congress has sought through legislation to direct certain outcomes in special cases to ensure the orderly administration of the INA.

Here in the First Circuit, the leading authority on the subject of immigration detention and due process is *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). In that case, Hernandez-Lara, a habeas petitioner, was arrested and detained "pending a determination of her removability." *Id.* at 23. She entered the United States in 2013 without inspection and settled in the interior for five years before she was discovered and arrested. *Id.* The Government gave her a detention hearing before an immigration judge, but the immigration judge placed the burden on Hernandez-Lara to prove that she did not pose a flight risk or a danger to the community. *Id.* The immigration judge concluded that she had not carried her burden. Hernandez-Lara filed a habeas petition and the District Court ruled that the immigration judge placed the burden on the wrong party. The District Court also ruled that due process required the Government to prove dangerousness or flight risk by clear and convincing evidence. *Id.* at 23-24.

On appeal, a divided panel of the First Circuit affirmed in part and reversed in part. It held that the Due Process Clause requires the Government to bear the burden of proof at a detention redetermination hearing (a/k/a bond hearing) but that the more likely than not standard governs rather than the clear and convincing evidence standard. *Id.* at 24, 46. It arrived at that conclusion based on a *Mathews v. Eldridge* analysis. *Id.* at 27-28 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Before I conduct such an analysis, I set the stage with a few observations. Of special note, Hernandez-Lara was settled in the United States for a significant duration. She was never apprehended at the border, inspected, or administratively released. She also was neither an unlawful reentrant nor someone subject to an existing order of removal. Also of special note, the *Hernandez-Lara* Court did not address the procedural requirements for an arrest in the wake of a removal order.[4] The Court only evaluated what process is proper for an immigration judge to observe in the context of a pre-removal bond hearing. And while this District Court and others have expanded the application of *Hernandez-Lara* to noncitizens seeking bond hearings who have a variety of different entry circumstances and immigration statuses, to my knowledge this District Court has never gone so far as to transpose the *Hernandez-Lara* procedure onto noncitizens who are subject to orders of removal, let alone noncitizens who have unlawfully reentered the United States after a prior removal and for whom Congress has specified that detention is appropriate. Nor has this Court ordered the Attorney General or her designees to give immigration judges primacy over post-removal-order arrest determinations.[5]

---

[4] The First Circuit also did not forbid detention pending a bond hearing. *See*, *e.g.*, *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021) ("For the reasons stated in *Hernandez-Lara v. Lyons*, . . . we agree with the district court's conclusion that Doe is entitled to a new hearing before an IJ at which the government will bear the burden of proving either dangerousness or flight risk *in order to continue detaining Doe*." (emphasis added)).

[5] In *Bermeo Sicha v. Bernal*, No. 1:25-CV-00418-SDN, 2025 WL 2494530 (D. Me. Aug. 29, 2025), Judge Neumann ruled that the Attorney General may not revoke a noncitizen's release pursuant to a bond order without first demonstrating a change in circumstances that justifies detention. Petitioner Bermeo Sicha was subject to a preexisting release order. *Id.* at *1, *7. But he was not subject to a final order of removal. *Id.* at *3. I read *Bermeo Sicha* as requiring a redetermination hearing before an immigration judge before a prior bond order by an immigration judge can be overridden on order of the Attorney General in the pre-removal context. That circumstance is not presently before me.

Still, despite these significant differences, a *Mathews v. Eldridge* analysis is appropriate. The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 28 (quoting *Mathews*, 424 U.S. at 335). "The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)).

### 1. The private interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections." *Addington v. Texas*, 441 U.S. 418, 425 (1979). In particular, detention upon accusation, in advance of trial or hearing, is the exception rather than the norm. *Hernandez-Lara*, 10 F.4th at 28 (citing *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Petitioner Muilu Lukanu has been released on conditions for roughly 17 months. She must report weekly and must observe curfew but is otherwise at liberty. As someone who is not presently detained, her interest in freedom from imprisonment is essentially

being honored pending her removal.  She has not been subjected to a substantial deprivation of liberty during her latest visit to the United States.  At some point, it is to be anticipated, that will change, but there is at present no cause to assume that she will experience prolonged detention to effectuate her removal to her home nation.[6]  Importantly, Petitioner is not presently awaiting a trial or hearing concerning the appropriateness of removal.  Because she unlawfully returned within five years of her last removal, she is not entitled to a hearing on the propriety of removal.  She is subject to removal by law.  Under these circumstances, there is no cause to anticipate detention throughout the pendency of a prolonged administrative proceeding and appeal.  When the time comes for her removal, it is to be hoped that she will receive some advance notice, but that is not what she seeks.  Instead, she seeks a procedural retooling of the administrative apparatus so that an immigration judge rather than the Attorney General controls the issuance (and presumably the timing) of a warrant for her arrest for removal purposes.

Petitioner's interest is not the same as Hernandez-Lara's.  She falls into a special category under which her current liberty—subject to minimal conditions—is a fortunate status rather than a presumed entitlement.[7]  And although she faces separation from her

---

[6] *Zadvydas v. Davis*, 533 U.S. 678 (2001), separately affords protection against prolonged post-removal-order detention.  This case is not presently a *Zadvydas* case and there is no cause to anticipate it will become one.  Should it ever, a new habeas petition could remediate such a deprivation.

[7] Petitioner's status is remarkable.  Presumably it is a function of the Attorney General's failure to remove Petitioner from the United States within 90 days of the reinstated removal order.  *See* 8 U.S.C. § 1231(a)(3).

> [Title] 8 U.S.C. § 1231, which governs noncitizens who have been charged with a final order of removal, unequivocally mandates detention of the noncitizen during the removal period, which is prescribed to last no more than ninety days under most circumstances. *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General

10

family, a consequence saddening in the extreme, that is the unavoidable consequence of Congress's prescribed penalty for an early, illegal reentry. Petitioner's liberty in the United States has been of sufficient duration to develop communal bonds and give birth to a child, which counts in her favor in the due process calculus. But throughout that time, Petitioner has nonetheless been subject to monitoring that serves as a constant reminder of the pendency of her removal.

For all of these reasons, I find that the first *Mathews* factor, which is commonly the most compelling factor for a noncitizen habeas petitioner, is not a compelling factor in this case and that Petitioner has failed to carry her burden. I so find as to both the imposition of being subject to detention for purposes of removal and the conditions of Petitioner's pre-removal release, which do not strike me as unconstitutionally onerous in light of Petitioner's status as an illegal reentrant.

### 2. *The risk of error and value of additional safeguards*

Procedural due process rules are designed not to prevent deprivation, but to ensure that any deprivation of a fundamental right is justified and not mistaken. *Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004) (citing *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). On the risk of erroneous deprivation, Petitioner argues that the hearing she requests would be of value to her. Reply at 16. However, she does not really contend with the statutory

---

release an alien who has been found inadmissible ...."); 8 U.S.C. § 1231(a)(1)(A) ("[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ....").

*Lison Ferro v. Hyde*, 2:25-cv-00513-SDN, 2025 WL 3003708, at *2 (D. Me. Oct. 27, 2025).

reality that detention for removal purposes, assuming it is not prolonged, would not be "erroneous" due to her early reentry to the United States, which called for the reinstatement of her removal order. This is not a case like *Hernandez-Lara* where shifting the burden of proof yielded significant benefits in regard to the avoidance of erroneous deprivations. Instead, in this case Petitioner seeks to reinvent the administrative rules for her convenience rather than to promote any safeguard against error. Again, Petitioner fails to make a convincing case under *Mathews*.

3. ***The Government's interest***

Petitioner argues that Respondents' interest in taking her out of her home without a hearing is low, even for purposes of effectuating a removal order. Reply at 14. She also appears to argue that once the Government takes a lenient approach, it has no interest in back tracking. *Id.* at 15-16. The Government's interest in avoiding the procedure Petitioner advocates is actually substantial. The administrative burdens of implementing the INA are great as it stands. Petitioner's proposal would require the Attorney General to stand up additional hearings before immigration judges for the purpose of carrying out removal orders whenever a noncitizen is not already detained. The immigration courts would thereby be tasked with all manner of logistical considerations that are more appropriately administered by the Attorney General under the statutory framework on the INA. Given the administrative burden and the unlikely utility of such a procedure, I conclude that the third *Mathews* factor does not commend Petitioner's proposal.

## CONCLUSION

Petitioner's due process challenge to her current status as an illegal reentrant with a reinstated removal order who remains at liberty and subject to only minimal supervisory restraints is unconvincing on all three of the *Mathews v. Eldridge* factors. Consequently, her Amended Petition is DENIED (ECF No. 6) and the case is DISMISSED. The restraint imposed on Respondents in my February 24, 2026 Order is VACATED.

SO ORDERED.

Dated this 11th day of March, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge